**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

**No. 22-7107**

UNITED STATES OF AMERICA,

Plaintiff – Appellee,

v.

JOHN L. BROOKS,

Defendant – Appellant.

Appeal from the United States District Court for the Eastern of Virginia, at Richmond. David J. Novak, District Judge. (3:93−cr−00063−DJN−1)

Submitted: March 27, 2023                    Decided: August 15, 2023

Before DIAZ, Chief Judge, RUSHING, Circuit Judge, and FLOYD, Senior Circuit Judge.

Affirmed by unpublished opinion. Chief Judge Diaz wrote the opinion, in which Judge Rushing and Senior Judge Floyd joined.

**ON BRIEF:** Geremy C. Kamens, Federal Public Defender, Alexandria, Virginia, Laura J. Koenig, Assistant Federal Public Defender, OFFICE OF THE FEDERAL PUBLIC DEFENDER, Richmond, Virginia, for Appellant. Jessica D. Aber, United States Attorney, Stephen W. Miller, Assistant United States Attorney, OFFICE OF THE UNITED STATES ATTORNEY, Richmond, Virginia, for Appellee.

Unpublished opinions are not binding precedent in this circuit.

DIAZ, Chief Judge:

John L. Brooks was convicted in 1994 on eleven counts related to armed robbery, including five counts under 18 U.S.C. § 924(c). He was sentenced to 1,090 months in prison, the mandatory minimum at the time. The majority of Brooks's sentence—1,020 months—was due to his § 924(c) convictions.

In 2018, Congress passed the First Step Act, eliminating the "stacking" scheme used for 18 U.S.C. § 924(c) convictions. If sentenced today, Brooks's statutory sentencing minimum for those convictions would be 300 months, not 1,020. Brooks filed for compassionate release based on this disparity.

The district court granted a partial sentence reduction and lowered Brooks's sentence to 466 months. The court didn't reduce the sentence to reflect Brooks's recalculated minimum of 370 months—300 for the § 924(c) convictions and 70 for the others—because Brooks's conduct during the robberies was "consistent with brandishing," and thus warranted a sentence in line with that enhancement. J.A. 380. Brooks appealed, claiming that his presentence report contained factual errors and that the district court improperly found he brandished a firearm.

Finding no reversible error, we affirm.

2

I.

A.

From June to July 1992, Brooks and his coconspirators committed five armed robberies in Virginia. Only the first three—which occurred on June 12, 16, and 26—are at issue.

On June 12, Brooks and two accomplices ran into a bank yelling and demanding money while one of them pointed an object wrapped in white cloth at a teller. The teller believed it was a gun but testified that she wasn't sure. Brooks's presentence report affirmatively called the object a gun.

On June 16, Brooks and an accomplice ran into a different bank and demanded money. One of them pointed a gun at the teller, and the other pointed something wrapped in brown paper at the assistant manager. Again, a witness believed the latter object to be a gun but didn't know, and again, the presentence report labeled the object a gun.

On June 26, Brooks and two accomplices robbed a third bank. A witness testified that one individual was "carrying" what the witness thought was a large-caliber weapon, though the presentence report states that an "Uzi-type weapon" was "displayed" rather than carried. *Compare* J.A. 133, *with* J.A. 388. The individual with the large-caliber weapon conducted a "sweep" of the bank lobby while the other two jumped on the counter and demanded money from the tellers. J.A. 134, 139.

3

Brooks and his coconspirators were arrested following their fifth robbery.  In 1993, a grand jury in the Eastern District of Virginia indicted Brooks on one count of conspiracy to commit armed bank robbery (18 U.S.C. § 371), five counts of armed bank robbery (18 U.S.C. § 2113(a), (d)), and five counts of using a firearm during and in relation to a crime of violence (18 U.S.C. § 924(c)).  Brooks went to trial and was convicted on all charges.

Brooks's presentence report calculated his mandatory minimum to be 1,090 months in prison.[1]  This was driven by the "stacked" sentencing scheme for 18 U.S.C. § 924(c) convictions.  At that time, Brooks's multiple § 924(c) convictions required a mandatory minimum of 60 months for his first § 924(c) offense and then "stacked" a 240-month mandatory minimum for each subsequent § 924(c) offense, even though they were part of the same case.  Thus, Brooks's mandatory minimum was 1,020 months for his five § 924(c) convictions: 60 months for the first conviction, and 960 months for the next four.

He also faced 60 months for the conspiracy count and 70 months for each of the five bank robbery counts.  These all ran concurrently with each other but consecutively with the § 924(c) counts.

The district court sentenced Brooks to the mandatory minimum of 1,090 months.

B.

In 2018, Congress passed the First Step Act, which ended the "stacked" sentencing scheme for 18 U.S.C. § 924(c) convictions.  First Step Act, Pub. L. No. 115-391, § 403,

---

[1] The presentence report doesn't specify, for any robbery, whether Brooks possessed a gun.

132 Stat. 5194, 5221–22 (2018). Now, multiple § 924(c) convictions in the same case are subject to their original statutory minimums, rather than the 240-month enhanced minimum for "stacked" convictions. In Brooks's case, this was 60 months each. So if convicted today, Brooks's sentence for his § 924(c) convictions would have a mandatory minimum of 300 months, resulting in a total of 370 months in prison, 720 months less than his current sentence. The First Step Act didn't make the stacking change retroactive, but we have held that stacking-driven disparities can be an "extraordinary and compelling reason[]" for compassionate release. *United States v. McCoy*, 981 F.3d 271, 286 (4th Cir. 2020).

In 2022, Brooks moved for compassionate release. *See* 18 U.S.C. § 3582(c)(1)(A). He argued that multiple factors constituted extraordinary and compelling reasons for his release, including the sentencing disparity between the current mandatory minimum sentence for his § 924(c) convictions of 300 months versus the 1,020 months imposed at his 1994 sentencing, his youth at the time of his offense, and his rehabilitation efforts in prison.

The district court granted his motion, but it reduced his prison sentence to 466 months rather than the requested 370. The court acknowledged that the § 3553(a) factors weighed in favor of a reduced sentence, but it concluded that Brooks's offenses warranted a sentence longer than the new statutory minimum.

The district court noted that the conspirators' conduct during the robberies was "consistent with brandishing." J.A. 380. The court didn't specify whether Brooks himself brandished a weapon, instead explaining that Brooks "and/or his coconspirators pointed

5

what appeared to be a gun, held a handgun on the two tellers and displayed an Uzi-type weapon and demanded money." J.A. 380–81 (cleaned up).

Brandishing is an enhancement that raises the statutory minimum for a § 924(c) offense from 60 months to 84 months if the defendant "display[s] all or part of the firearm, or otherwise make[s] the presence of the firearm known to another person, in order to intimidate that person, regardless of whether the firearm is directly visible to that person." 18 U.S.C. § 924(c)(1)(A)(ii), (c)(4). Because the enhancement was added in 1998—after Brooks was sentenced—the judge didn't consider it at Brooks's initial sentencing.

But the district court did look to the brandishing enhancement's mandatory minimum sentence as a guide in resolving Brooks's compassionate release motion. It ultimately landed on 84 months for each of the four counts. The court didn't disturb the 60-month sentence for the first § 924(c) conviction, the 60-month sentence on the conspiracy conviction, or the 70 months Brooks received for the five bank robbery counts.

This appeal followed.


II.

Brooks raises two issues on appeal. First, he claims the presentence report incorrectly suggested he or his coconspirators brandished a firearm during the June 12, 16, and 26 robberies. Second, he claims the district court improperly applied the brandishing mandatory minimum in deciding his First Step Act motion.

We typically review a grant of compassionate release for an abuse of discretion. *United States v. Kibble*, 992 F.3d 326, 329 (4th Cir. 2021). We will uphold the district court's decision unless it "acted arbitrarily or irrationally, failed to consider judicially recognized factors constraining its exercise of direction, relied on erroneous factual or legal premises, or committed an error of law." *United States v. Dillard*, 891 F.3d 151, 158 (4th Cir. 2018) (cleaned up).

But the alleged errors in the presentence report demand a different standard of review. Brooks didn't raise this issue before the district court during his original sentencing or when he moved for compassionate release. When a defendant fails to make an argument in the district court, an appellate court "may review the issue only for plain error." *Davis v. United States*, 140 S. Ct. 1060, 1061 (2020).

Still, Brooks maintains that we should review the alleged presentence-report errors for an abuse of discretion. He claims that he didn't need to contest the errors related to brandishing when originally sentenced since that enhancement didn't yet exist. But Brooks had a duty to review the presentence report and object to any errors. *See United States v. Roper*, 26 F. App'x 104, 105–06 (4th Cir. 2001) ("The court asked Roper if he had any objections to the pre-sentence report and Roper indicated he did not. . . . Thus, Roper's final contention is [not] preserved."). At the very least, Brooks should have alerted the district court to the alleged errors after the government argued that the district court should apply the brandishing mandatory minimum.

7

Since Brooks failed to object to the purported errors in the district court, we review the presentence-report issue for plain error. But we test Brooks's claim that the district court improperly applied a brandishing mandatory minimum for abuse of discretion.

A.

We begin with Brooks's claim that the presentence report contained factual errors. He says that these errors led the district court to wrongly conclude the conspirators' actions resembled brandishing during the robberies on June 12, 16, and 26. For the district court to have plainly erred, the presentence report must contain "(1) an error; (2) that is plain; and (3) that affects [Brooks's] substantial rights." *United States v. Collins*, 982 F.3d 236, 241 (4th Cir. 2020).

For the June 12 and 16 robberies, Brooks challenges the parts of the presentence report that definitively state that the conspirators were armed with or displayed guns.[2] He says these statements conflict with trial testimony from tellers who only *believed* the objects were guns. *See* J.A. 74 (June 12 teller testifying she "believed [the object] to be a gun"); J.A. 106 (assistant manager in June 16 robbery responding "Oh, yes, I did" when asked whether she believed the object to be a gun). According to Brooks, because the

---

[2] The presentence report incorrectly states that both suspects pointed something wrapped in a towel in the June 12 robbery, but this minor error is immaterial since the jury found at least one firearm was used during the robbery and Brooks was aware of it. *See United States v. Wilson*, 135 F.3d 291, 305 (4th Cir. 1998) ("A defendant may be convicted of a § 924(c) charge on the basis of a coconspirator's use of a gun if the use was in furtherance of the conspiracy and was reasonably foreseeable to the defendant.")

8

tellers in both robberies didn't *know* whether the objects were guns, the government never proved that a gun was brandished. We disagree.

In finding Brooks guilty of a § 924(c) offense for those robberies, the jury necessarily found that the objects the witnesses saw were guns. *See* 18 U.S.C. § 924(c) (stating that the statute applies to a "person who, during and in relation to any crime of violence . . . uses or carries a firearm"). So there was no error in the presentence report, plain or otherwise.

Next, Brooks complains that the presentence report erroneously states that an "Uzi-type weapon was *displayed*" during the June 26 robbery, while a witness testified that the weapon was only "carried." Appellant's Br. at 17–18 (emphasis added). Brooks claims that the use of "displayed" improperly suggested that the weapon was brandished, and that the district court erred in relying on it to resolve Brooks's compassionate release motion. We disagree.

The relevant guideline explains that

"Brandished" with reference to a dangerous weapon (including a firearm) means that all or part of the weapon was displayed, or the presence of the weapon was *otherwise made known* to another person, in order to intimidate that person, regardless of whether the weapon was directly visible to that person. Accordingly, although the dangerous weapon does not have to be directly visible, the weapon must be present.

U.S.S.G. § 1B1.1 cmt. n.1(C) (emphasis added).

The trial testimony clarifies that the conspirators were not simply carrying concealed weapons. Witnesses to the June 26 robbery *saw* the guns being carried, so they were "made known" to them. And the actions of the co-conspirators during the robbery

9

showed the required intimidatory purpose.  A witness testified that at least one of the guns was used to intimidate the employees and customers.  *See* J.A. 133 (security guard in June 26 robbery describing how one of the suspects entered the lobby carrying a large-caliber weapon and "ordered everyone down").

Admittedly, the presentence report doesn't state who carried which gun, and the district court didn't parse that out.  But because Brooks was convicted of conspiracy, it doesn't matter.  *See Rosemond v. United States*, 572 U.S. 65, 77–78 (2014).  Since Brooks "actively participate[d] in [the] criminal venture with full knowledge of the circumstances constituting the charged offense," he can also be held liable for the actions of his codefendants.  *See id.* at 77.  So here again, there was no error, plain or otherwise, in the presentence report.

### B.

Brooks next argues that the district court abused its discretion by "basing its decision . . . on the current mandatory minimum sentence for brandishing a firearm." Appellant's Br. at 10.  As a reminder, we uphold the district court's decision unless it "acted arbitrarily or irrationally, failed to consider judicially recognized factors constraining its exercise of direction, relied on erroneous factual or legal premises, or committed an error of law." *Dillard*, 891 F.3d at 158 (cleaned up).

The district court didn't impose an 84-month mandatory minimum for brandishing. Congress didn't make the First Step Act's change to stacking retroactive.  § 403(b), 132 Stat. at 5222; *see also United States v. Jordan*, 952 F.3d 160, 171–72 (4th Cir. 2020).  So

10

Brooks's mandatory minimum for his § 924(c) convictions remains 1,020 months. And the district court recognized that it wasn't conducting a resentencing proceeding. *See* J.A. 380 & n.3 (comparing a compassionate release sentence reduction with a resentencing).

But the court also recognized that if it *were* conducting a resentencing, Brooks's mandatory minimum on each count would have been 60 months (not 84) "because during the trial, the jury did not specifically find that Defendant brandished a firearm." J.A. 380 n.3; *see also id.* (explaining that under *Alleyne v. United States*, 570 U.S. 99, 103 (2013), facts that increase the statutory penalty for a crime must be found by a jury beyond a reasonable doubt). The court further noted that if it were resentencing Brooks or sentencing a defendant for similar conduct today, it would have discretion to impose any appropriate sentence within the statutory range of 60 months to life. J.A. 380 n.3; *see also Alleyne*, 570 U.S. at 116 ("Nothing in this history suggests that it is impermissible for judges to exercise discretion—taking into consideration various factors relating both to offense and offender—in imposing a judgment *within the range* prescribed by statute." (cleaned up)).

In other words, the district court benchmarked Brooks's sentence reduction against the likely penalty he would face if sentenced today. *See* J.A. 372 ("[Brooks's] five § 924(c) convictions resulted in a mandatory minimum 1020-month term of imprisonment, whereas, today, the mandatory minimum for his charges would be 300 months."). In doing so, the court considered not only the current statutory range but "what sentence in that range is appropriate based on Defendant's conduct." J.A. 380 n.3. It found Brooks's conduct was "more severe than merely using or carrying a firearm." J.A. 380. And in accounting for

11

that increased severity in Brooks's sentence reduction, the court "dr[ew] helpful guidance" from the 84-month mandatory minimum for brandishing. *Id.* That was all within its ample discretion.

Brooks contends that when exercising discretion to grant compassionate release, district courts can't engage in a "retrospective review of facts not litigated during original proceedings." Appellant's Br. at 12 (cleaned up). But that's not what happened here.

We've noted that "not all defendants convicted under § 924(c) should receive new sentences, but the courts should be empowered to relieve some defendants of those sentences on a case-by-case basis." *McCoy*, 981 F.3d at 287 (cleaned up). District courts must use the facts within the record to make these "case-by-case" determinations. And one of the factors they are required to consider is "the nature and circumstances of the offense." *See* 18 U.S.C. § 3582(c)(1)(A) (directing the court to the factors in 18 U.S.C. § 3553(a)). The district court did so here, concluding that the circumstances were aggravated because Brooks and his co-conspirators "used guns to scare the bank tellers into giving them money." J.A. 376.

And contrary to Brooks's assertion, these facts were litigated. They appear in both the trial transcripts and Brooks's presentence report. Brooks's cited cases largely involve drug weights that the government theoretically could have, but didn't, charge under a prior sentencing regime. Under those circumstances, courts declined to speculate that the government would have ultimately convicted the defendant at the higher drug amount, especially given the complex dynamics of plea bargaining. *E.g.*, *United States v. Pierre*,

372 F. Supp. 3d 17, 22 (D.R.I. 2019) ("[T]he Court is not confident that a well-counseled defendant caught with 28.77 grams of crack cocaine and a reasonable prosecutor . . . would have reached a plea deal of 28 grams or more of crack cocaine.").

But in Brooks's case, there's no need to speculate about uncharged conduct. As the district court recognized, even if Brooks had faced the lower 60-month mandatory minimum for each count, it would have been within its discretion to impose a sentence of up to life based on the sentencing factors. Based on the convictions and record, the court found Brooks's conduct would have warranted a 466-month sentence. It then benchmarked Brooks's sentence reduction to that figure, finding it was sufficient, but not greater than necessary, to fulfill the purposes of sentencing. *See* J.A. 376–79 (discussing the § 3553(a) factors).

The district court's sentencing decision wasn't an abuse of discretion.

\* \* \*

We affirm the district court's judgment. And we dispense with oral argument because the facts and legal contentions are adequately presented in the materials before this court and argument would not aid in our decision.

*AFFIRMED*

13